Citation Nr: 1448553 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 08-33 036 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to an initial rating in excess of 10 percent (prior to February 26, 2014) and a rating in excess of 30 percent (from February 26, 2014), for migraines, to include residuals of traumatic brain injury (TBI).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

L. Zobrist, Associate Counsel



INTRODUCTION

The appellant is a Veteran who served on active duty from October 1986 to September 1999. This matter is before the Board of Veterans' Appeals (Board) on appeal from a September 2007 rating decision by the Winston-Salem, North Carolina, Department of Veterans Affairs (VA) Regional Office (RO) that granted service connection for headaches with a 10 percent rating, effective October 10, 2006. This matter was previously before the Board in May 2010, July 2012, May 2013, and October 2013; each time it was remanded for additional development, to include a VA examination. [This case was previously assigned to another Veterans Law Judge. It has been reassigned to the undersigned.] Jurisdiction was transferred to the Houston, Texas, RO, which issued an interim [August 2014] rating decision, increasing the rating to 30 percent, effective from February 26, 2014. 


FINDING OF FACT

Throughout the appeal period, the Veteran's service-connected migraines have been manifested by characteristic prostrating attacks occurring, on average, once a month over the last several months; they are not shown to have been productive of severe economic inadaptability.


CONCLUSION OF LAW

Throughout the appeal period, the criteria for a 30 percent rating, but no higher, for migraines have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124s, Diagnostic Codes 8045, 8100 (2013).



REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claim.

The RO provided the Veteran pre-adjudication notice by letter dated in December 2006. This appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection for migraines/headaches. Courts have held that once service connection is granted and the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no additional discussion of the duty to notify is required.

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. VA has obtained service and pertinent postservice treatment records and provided the Veteran VA examinations in August 2007 and June 2014; the record also contains a report of a February 2014 examination (using a report form provided by VA) conducted by a U.S. military physician while the Veteran was residing out of the country. Taken together, the examination reports/opinions describe the service-connected migraines in detail sufficient to allow the Board to make a fully informed determination. Furthermore, the June 2014 examination comports with the remand instructions in each of the prior Board remands that such examination be provided. See Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers on the appellant, as a matter of law, the right to compliance with the remand orders). 

[To the extent that prior remand instructions required consideration of psychiatric symptomatology, the Board notes that the August 2014 rating decision awarded a separate disability rating for psychiatric disability, secondary to service-connected migraines; that decision is not before the Board at this time. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). In addition, treatment records were requested, the Veteran was notified regarding the status of his representation (see July 2012 Board remand and July 2012 notification letter), and the analysis below considers the Veteran's migraines under the rating criteria for TBI (see May 2013 Board remand).]

The Board acknowledges that the June 2014 VA examination reports refer to medical records from May and June 2014 that are not independently part of the record and has considered whether remand is necessary to acquire those records. However, the June 2014 VA examiner quoted all pertinent medical records verbatim, including the 2014 records. Thus, the necessary evidence is in the record, and the claim was readjudicated in the August 2014 rating decision. Consequently, the Board finds that a remand for to procure the records in their original format would serve no useful or meaningful purpose and only instead result in unnecessarily imposing additional burdens on VA with no potential benefit flowing to the Veteran. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran should be avoided). 

All known and available records relevant to the issue on appeal have been obtained and associated with the Veteran's claims file, and the Veteran has not contended otherwise. VA has substantially complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on the claim at this time.


Legal Criteria, Factual Background, and Analysis

Legal Criteria

The present appeal involves the Veteran's claim that the severity of his service-connected migraines warrants a higher disability rating. Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

Moreover, adjudication of a claim for a higher initial disability rating should include specific consideration of whether "staged ratings" (assignment of different ratings for distinct periods of time based on the facts found) is appropriate. See Fenderson v. West, 12 Vet. App. 119 (1999).

Prior to February 26, 2014, the Veteran's migraines were rated, by analogy, under 38 C.F.R. § 4.124a, Diagnostic Code 8045 (Residuals of TBI). Under the regulation in effect at the time the award of service connection was granted (September 2007), any purely subjective complaints related to brain trauma, including headaches, were to be rated no more than 10 percent disabling. 

Effective October 23, 2008, VA amended the Schedule for Rating Disabilities by revising the portion of the Schedule that addresses neurological conditions and convulsive disorders. The effect of this action was to provide detailed and updated criteria for evaluating residuals of TBI. These amendments revised 38 C.F.R. § 4.124a, Diagnostic Code 8045, effective October 23, 2008. In essence, the revised Code 8045 provides for rating TBI residuals based on three main areas of dysfunction that may result from TBI: cognitive, emotional/behavioral, and physical. 38 C.F.R. § 4.124a, Code 8045 (2013). Ten separate facets are evaluated, with criteria for levels of impairment provided for each facet. If no facet is evaluated as total (100 percent disabling), the level of the highest facet determines the overall percentage evaluation: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent.

The amendment applied to all applications for benefits received by VA on or after October 23, 2008, unless the Veteran requested review under the new criteria. Schedule for Rating Disabilities; Evaluation of Residuals of Traumatic Brain Injury (TBI), 73 Fed. Reg. 54,693 (September 28, 2008) (codified at 38 C.F.R. pt. 4). The Veteran requested review under the new criteria. (See April 2009 correspondence.) 

In an April 2012 supplemental statement of the case, the RO also considered the Veteran's migraines under Code 8100, migraines. Under Code 8100, a 10 percent rating is awarded for migraines with characteristic prostrating attacks averaging one every two months over the last several months. A 30 percent rating requires characteristic prostrating attacks occurring, on average, once a month over the last several months. A 50 percent (and the highest schedular rating) requires very frequent completely prostrating and prolonged attacks that are productive of severe economic inadaptability. [The above criteria for Code 8100 were applicable throughout the period on appeal.]

Factual Background

The Board has reviewed all of the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence, as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or does not show, as to the claim.

In his October 2006 claim (a request to reopen a previously denied claim), the Veteran requested service connection for migraines/headaches, asserted that he was experiencing migraines/headaches at least two to three times per week, and that he was restricted from activities when experiencing migraines/headaches. 

VA treatment records from September and October 2006 note reports of daily frontal headaches, lasting all day, for the past four to five years. The Veteran reported mild photophobia and seeing a "flash" when he closed his eyes. He was diagnosed with chronic traumatic or migraine headaches. A neurological examination was normal, and a CT scan was within normal limits. 

On August 2007 VA examination, the Veteran described his headaches as constant and, depending on the location, incapacitating for two to three days at a time. He reported that he sometimes had an aura of flashing lights, and that his headaches were sometimes aggravated by bright lights. He reported missing 20 to 25 days of work per year due to headaches, and that he cannot drive when he has a severe headache. His neurological examination was normal. The examiner diagnosed combination posttraumatic/migraine headaches.

In his October 2007 notice of disagreement, the Veteran reported that he had lost significant work hours and changed jobs seven times in seven years due to his headaches.

In a November 2010 telephone contact, the Veteran reported that he was required to wear sunglasses indoors due to the severity of his headaches. 

In February 2014, while employed as a civilian overseas, the Veteran was examined by a military physician. The examiner documented symptoms of constant throbbing or pulsating pain on both sides of the head, typically lasting longer than two days, with associated changes in vision and sensitivity to light. The Veteran was found to have very frequent characteristic prostrating and prolonged attacks of migraine and non-migraine headache pain occurring more frequently than once per month. The examiner stated that the headaches affect the Veteran's ability to work, but did not provide any explanation. [The examiner also diagnosed depression, which is the subject of a separate rating decision and not part of this appeal.]

In June 2014, the Veteran's file was reviewed for a VA medical opinion. The examiner noted the Veteran's history of frequent, incapacitating headaches and recommended further physical examination for headaches, TBI, and psychiatric disability. 

On subsequent June 2014 VA TBI/headaches examination, the Veteran was diagnosed with TBI, with residuals of migraines. A TBI-specific evaluation was conducted in accordance with the facets employed in the rating schedule. The Veteran was evaluated as having mild memory loss on objective testing (facet level 1), with subjective reports of "difficulty following a conversation, recalling recent conversations, remembering names of new acquaintances, finding words, with attention, concentration, and executive function difficulty." Social interaction was evaluated as occasionally inappropriate (facet level 1), based on subjective reports that the Veteran "does not like being around people and avoids Them." Visual spatial orientation was evaluated as mildly impaired (facet level 1), based on subjective reports that the Veteran's "ability to judge distances is below average." He reported that he "is able to read maps, follow directions and use GPS," but "may become lost in unfamiliar surroundings." The Veteran reported three or more subjective symptoms that mildly interfere with work instrumental activities of daily living; or work, family or other close relationships (facet level 1), based on subjective reports of frequent headaches, frequent insomnia and hypersensitivity to light and noise. He was evaluated as having one or more neurobehavioral effects that occasionally interfere with workplace interaction, social interaction, or both but do not preclude them (facet level 1), based on denials of "impulsivity, unpredictability, verbal aggression, physical aggression, belligerence, moodiness, lack of cooperation, inflexibility, and impaired awareness of disability." Judgment, motor activity, and consciousness were judged to be normal, he was always oriented to person, time, place, and situation, and he was able to communicate by and comprehend spoken and written language (facet level 0). Additional symptoms associated with TBI included visual impairment (including three episodes of transient vision loss) and three episodes of shaking, as well as psychiatric disability that was separately evaluated. [On separate central nervous system evaluation, the examiner noted that there were no subsequent episodes of shaking and that strength was symmetric following the last episode.] The Veteran reported that his TBI (aside from headaches) did not preclude work.

As regards the headache portion of the examination, the examiner documented the Veteran's report of near continuous pulsating or throbbing pain on both sides of the head, with accompanying symptoms of nausea, sensitivity to light and sound, and changes in vision. Periods of severe headache were reported, lasting two to three days. The examiner noted characteristic prostrating attacks of migraine and non-migraine headache pain, occurring once a month, that were not very prostrating and prolonged attacks productive of severe economic inadaptability. The Veteran reported that his headaches had become severe and frequent such that he was precluded from working. 

Analysis

When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which the case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

After review of the record, the Board finds that the evidence supports a 30 percent rating under Diagnostic Code 8100 throughout the period on appeal. On August 2007 VA examination, the Veteran reported incapacitating headaches lasting two to three days, causing up to 25 days of missed work per year. The VA examiner did not indicate that the reported symptoms were inconsistent with his diagnosis, and the Board finds no reason to doubt the credibility of the Veteran's reports. Considering the Veteran's symptoms in the light most favorable to him, the Board finds that the reported symptoms are most similar to those described under the 30 percent rating for Code 8100: characteristic prostrating attacks occurring, on average, once a month. As the August 2007 VA examiner provided a diagnosis that included migraine headaches, and Code 8100 provides for a higher disability rating than that available for the same reported symptoms under the Code originally assigned, the disability is more properly rated as analogous to Code 8100. 

The Board has considered whether the Veteran is entitled to a rating in excess of 30 percent under any suitable Diagnostic Code at any point during the appeal period. Under Code 8100, a 50 percent rating requires that the attacks (which must be very frequent, completely prostrating, and prolonged) be "productive of severe economic inadaptability." Thus, although the February 2014 military examiner described the Veteran's headaches as very frequent, prostrating, and prolonged, the record indicates that the Veteran continued to be employed until March 2014, and that he was able to adapt his work to his disability. (See, e.g., November 2010 report of wearing sunglasses indoors and June 2014 VA headache examination (in which the Veteran reported accommodations permitted by his employer.)) 

Furthermore, although the Veteran reported during his June 2014 VA headaches examination that he was unable to work due to his headaches, the VA examiner considered the Veteran's comments (noting that headaches cannot be independently verified and, thus, are evaluated solely on the Veteran's subjective reporting) and concluded that they, alone, were not productive of severe economic inadaptability. The Board notes that a contemporaneous psychiatric examination determined that the Veteran experiences total occupational and social impairment due to psychiatric disability, which is secondary to his migraines/headaches. While the Veteran is competent to report symptoms he experiences, such as interference with employability, the question of which particular disability is responsible for that symptomatology is, in this instance, a medical question that requires medical knowledge/training. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Here, the Board finds that the June 2014 examiners' opinions are informed by review of the record and assessment of the clinical evidence and are more probative as to which specific disability is responsible for any "severe economic inadaptability." Consequently, the Board finds that the criteria for a 50 percent rating under Code 8100 are not met at any point during the appeal period.

The Board has also considered whether the Veteran is entitled to a rating in excess of 30 percent under the revised rating criteria for Diagnostic Code 8045. The Veteran received a comprehensive VA TBI examination in June 2014, and the highest facet impairment rating assigned is 1, which is consistent with a 10 percent rating. The examiner, who cited to the Veteran's historical medical records and conducted an in-person examination, did not identify any evidence in the record that would support a clinical finding of a higher level of impairment at any point during the rating period. The Board finds that the VA examiner's opinion is consistent with the evidence of record and, thus, highly probative evidence against a finding of entitlement to a higher disability rating under Code 8045. The Board also notes that several of the symptoms clinically assessed for the first time in the June 2014 series of VA examinations (including memory loss and neurobehavioral effects) were contemplated in the assignment of a 100 percent rating for psychiatric disability, and thus cannot also be considered as part of the assessment for migraines/headaches. See 38 C.F.R. § 4.14 (2013) (compensation for the same symptoms under two different diagnostic codes is impermissible).

The Board has considered August 2014 statements from the Veteran and his mother. In essence, the Veteran objects to a rating for migraines/headaches under Code 8100 and wishes to be evaluated comprehensively for symptoms of TBI (including hyperhidrosis). However, the Board notes that his July 2002 claim for "head trauma" was denied in a final March 2003 rating decision. His August 2004 request to reopen that claim was denied in a final November 2004 rating decision. In his October 2006 claim, which led to the rating decision on appeal, the Veteran requested compensation for migraines/headaches; he did not request to reopen a claim for TBI. In March 2008 correspondence, following the submission of his notice of disagreement, he clarified that he was appealing, inter alia, the disability rating assigned for migraines/headaches. As the Board's jurisdiction is limited to the rating decision on appeal, it does not have jurisdiction to consider, in this decision, compensation for additional symptomatology not relevant to the decision on appeal. If the Veteran wishes to reopen or initiate claims for additional symptomatology (e.g., hyperhidrosis or tremors) he associates with an in-service event (e.g., head trauma), he is free to raise such claims to the RO. To the extent that the Board has considered evaluating the Veteran's migraines/headaches under the TBI rating criteria, it has done so solely to ensure that the Veteran is properly rated for the disability manifested as migraines/headaches. 

To the extent that the Veteran's mother describes, in her August 2014 statement, symptoms associated with his service-connected psychiatric disability or tinnitus, the Board notes that such symptomatology has been separately considered as part of grant of service connection for psychiatric disability; that decision is not before the Board at this time. See 38 U.S.C.A. § 7105; see also 38 C.F.R. § 4.14.

In summary, it is clear, from the record, that the Veteran's migraines/headaches have, throughout the appeal period, been manifested by characteristic prostrating attacks occurring on an average once a month. It has not been shown that the migraines/headaches are productive of severe economic inadaptability. Consequently, a rating of 30 percent, but no greater, is warranted through the appeal period. 38 C.F.R. § 4.7.

Furthermore, the Board finds that the evidentiary record presents no reason to refer the case to the Compensation and Pension Service for consideration of an extra-schedular evaluation under 38 C.F.R. § 3.321(b). The Veteran's migraine/headache-related complaints of pain, photosensitivity, sensitivity to noise, and auras/changes in vision are encompassed in the schedular criteria. There is no evidence of symptoms or impairment not encompassed by the schedular criteria, so as to render those criteria inadequate, nor is there evidence of hospitalizations or marked interference with employment beyond that expressly contemplated in the rating criteria (providing for prostrating (i.e., incapacitating) attacks). See Thun v. Peake, 22 Vet. App. 111 (2008).

Furthermore, the evidence of record reflects that, during the period under consideration in this appeal, the Veteran was either employed full-time or in receipt of a cumulative 100 percent disability rating. See, e.g., July 2014 request for TDIU (listing his last day of employment as March 9, 2014, and stating that he worked 84 hours per week prior to that time) and September 2014 rating decision (awarding a 100 percent schedular rating for psychiatric disability, effective December 14, 2013). Consequently, consideration of the Veteran's eligibility for a total disability rating based on individual unemployability is not warranted. See Rice v. Shinseki, 22 Vet. App. 447 (2009).


ORDER

Entitlement to an initial 30 percent rating for migraines, but no higher, is granted, subject to the laws and regulations governing the payment of monetary benefits.




____________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs